**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

CHANIE DEMBITZER,

    Plaintiff,

v.

ARRAY BIOPHARMA INC.,
CARRIE S. COX,
CHARLES M. BAUM,
GWEN A. FYFE,
KYLE A. LEFKOFF,
JOHN A. ORWIN,
SHALINI SHARP,
RON SQUARER, and
GIL J. VAN LUNSEN,

    Defendants.

**COMPLAINT AND JURY DEMAND**

Plaintiff Chanie Dembitzer ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Array BioPharma Inc. ("Array" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. § 240.14d-9, and to enjoin the expiration

of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which Array will be acquired by Pfizer Inc. ("Pfizer") through Pfizer's wholly owned subsidiary Arlington Acquisition Sub Inc. ("Purchaser") (the "Proposed Transaction").

2. On June 17, 2019, Array and Pfizer issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated June 14, 2019 (the "Merger Agreement") to sell Array to Pfizer. Under the terms of the Merger Agreement, on June 28, 2019, Purchaser commenced the Tender Offer to purchase all outstanding shares of Array for $48.00 in cash per share of Array common stock (the "Offer Price"). The Tender Offer is scheduled to expire at one minute after 11:59 p.m. Eastern Time on the date that is twenty (20) business days following commencement of the Tender Offer. The Proposed Transaction has a total enterprise value of approximately $11.4 billion.

3. On June 28, 2019, defendants filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement, which recommends that Array stockholders tender their shares in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) the background of the Proposed Transaction; (ii) Company management's financial projections; and (iii) the valuation analyses prepared by the Company's financial advisor, Centerview Partners LLC ("Centerview"), in connection with rendering its fairness opinion. The failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as Array stockholders need such information in order to make a fully informed decision whether to tender their shares in favor of the Proposed Transaction or seek appraisal.

4. In short, unless remedied, Array's public stockholders will be forced to make a tender or appraisal decision on the Proposed Transaction without full disclosure of all material

information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Array is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Array common stock.

9. Defendant Array is a Delaware corporation with its principal executive offices located at 3200 Walnut Street, Boulder, Colorado 80301. Array is a biopharmaceutical company focused on the discovery, development and commercialization of targeted small molecule drugs to treat patients afflicted with cancer. The Company's common stock is traded on the NASDAQ

Global Market under the ticker symbol "ARRY."

10. Defendant Carrie S. Cox ("Cox") has been a director of the Company and Chair of the Board since August 2018.

11. Defendant Charles M. Baum ("Baum") has been a director of the Company since April 2014. Defendant Baum previously worked at Pfizer for nine years, including as Senior Vice President for Clinical Research within Pfizer's Worldwide Research & Development division, and as Vice President and Head of Oncology Development and Chief Medical Officer for Pfizer's Biotherapeutics and Bioinnovation Center.

12. Defendant Gwen A. Fyfe ("Fyfe") has been a director of the Company since January 2012.

13. Defendant Kyle A. Lefkoff ("Lefkoff") has been a director of the Company since May 1998. Defendant Lefkoff previously served as Chairman of the Board from May 1998 to January 2012 and from April 2012 to August 2018. From January to April 2012, defendant Lefkoff served as interim Executive Chairman. Since 1995, defendant Lefkoff has been a General Partner of Boulder Ventures, Ltd., a venture capital firm and prior investor in Array.

14. Defendant John A. Orwin ("Orwin") has been a director of the Company since November 2012.

15. Defendant Shalini Sharp ("Sharp") has been a director of the Company since April 2017.

16. Defendant Ron Squarer ("Squarer") has been Chief Executive Officer ("CEO") and a director of the Company since April 2012.

17. Defendant Gil J. Van Lunsen ("Van Lunsen") has been a director of the Company since October 2002.

18.     Defendants identified in paragraphs 10 to 17 are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

19.     Pfizer is a Delaware corporation with its principal executive offices located at 235 East 42nd Street, New York, New York 10017.  Pfizer is a research-based global biopharmaceutical company.  Pfizer's common stock is traded on the New York Stock Exchange under the ticker symbol "PFE."

20.     Purchaser is a Delaware corporation and wholly owned subsidiary of Pfizer.

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company and the Proposed Transaction**

21.     Array is a fully integrated biopharmaceutical company focused on the discovery, development, and commercialization of transformative and well-tolerated targeted small molecule drugs to treat patients afflicted with cancer and other high-burden diseases.  The Company's lead clinical programs, encorafenib and binimetinib, are being investigated in over 30 clinical trials across a number of solid tumor indications, including a Phase 3 trial in BRAF-mutant metastatic colorectal cancer ("mCRC").  Array's pipeline also includes several programs in registration trials being advanced by Array or its current license-holders.

22.     Array markets BRAFTOVI (encorafenib) capsules in combination with MEKTOVI (binimetinib) tablets for the treatment of patients with unresectable or metastatic melanoma with a $BRAF^{V600E}$ or $BRAF^{V600K}$ mutation.  BRAFTOVI and MEKTOVI were available for sale beginning on July 2, 2018.  On August 7, 2018, the Company announced it had received Breakthrough Therapy Designation from the U.S. Food and Drug Administration ("FDA") for BRAFTOVI in combination with MEKTOVI and cetuximab for the treatment of patients with $BRAF^{V600E}$-mutant mCRC.  In the press release, Victor Sandor ("Sandor"), the Company's Chief

Medical Officer commented on the positive news, stating:

> We are delighted that the FDA has recognized the potential of this combination for patients with $BRAF^{V600E}$-mutant metastatic colorectal cancer. . . . As there are no regimens approved specifically for $BRAF^{V600E}$-mutant mCRC, this designation provides us with the opportunity to work closely with the FDA to potentially accelerate our effort to bring an important treatment option to these patients in critical need.

23. On March 18, 2019, Array announced that the National Comprehensive Cancer Network updated its Clinical Practice Guidelines in oncology for Colon and Rectal Cancer to include BRAFTOVI in combination with MEKTOVI and ERBITUX (cetuximab) or panitumumab as a Category 2a treatment for patients with $BRAF^{V600E}$-mutant mCRC, after failure of one or two prior lines of therapy for metastatic disease.

24. Array has exclusive rights to BRAFTOVI and MEKTOVI in the U.S. and Canada. The Company has granted Ono Pharmaceutical Co., Ltd. exclusive rights to commercialize both products in Japan and South Korea, Medison Pharma Ltd. exclusive rights to commercialize both products in Israel, and Pierre Fabre Medicament SAS exclusive rights to commercialize both products in all other countries, including those in Europe, Asia and Latin America.

25. On June 14, 2019, Array's Board caused the Company to enter into the Merger Agreement with Pfizer.

26. On June 17, 2019, Array and Pfizer issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> NEW YORK & BOULDER, Colo--Pfizer Inc. (NYSE: PFE) and Array BioPharma Inc. (NASDAQ: ARRY) today announced that they have entered into a definitive merger agreement under which Pfizer will acquire Array, a commercial stage biopharmaceutical company focused on the discovery, development and commercialization of targeted small molecule medicines to treat cancer and other diseases of high unmet need. Pfizer has agreed to acquire Array for $48 per share in cash, for a total enterprise value of approximately $11.4 billion. The Boards of Directors of both companies have approved the merger.

Array's portfolio includes the approved combined use of BRAFTOVI®(encorafenib) and MEKTOVI® (binimetinib) for the treatment of $BRAF^{V600E}$ or $BRAF^{V600K}$ mutant unresectable or metastatic melanoma. The combination therapy has significant potential for long-term growth via expansion into additional areas of unmet need and is currently being investigated in over 30 clinical trials across several solid tumor indications, including the Phase 3 BEACON trial in *BRAF*-mutant metastatic colorectal cancer (mCRC).

In the U.S., colorectal cancer is the third most common type of cancer in men and women. An estimated 140,250 patients were diagnosed with cancer of the colon or rectum in 2018, and approximately 50,000 are estimated to die of their disease each year.[1] *BRAF* mutations are estimated to occur in up to 15% of colorectal cancer cases and represent a poor prognosis for these patients.

"Today's announcement reinforces our commitment to deploy our capital to bring breakthroughs that change patients' lives while creating shareholder value," said Albert Bourla, chief executive officer of Pfizer. "The proposed acquisition of Array strengthens our innovative biopharmaceutical business, is expected to enhance its long-term growth trajectory, and sets the stage to create a potentially industry-leading franchise for colorectal cancer alongside Pfizer's existing expertise in breast and prostate cancers."

In addition to the combination therapy for *BRAF*-mutant metastatic melanoma, Array brings a broad pipeline of targeted cancer medicines in development, as well as a portfolio of out-licensed potentially best-in-class and/or first-in-class medicines, which are expected to generate significant royalties over time.

"We are incredibly proud that Pfizer has recognized the value Array has brought to patients and our remarkable legacy discovering and advancing molecules with great potential to impact and extend the lives of patients in critical need," said Ron Squarer, Array chief executive officer. "Pfizer shares our commitment to patients and a passion for advancing science to develop even more options for individuals with unmet needs. We're excited our team will have access to world-class resources and a broader research platform to continue this critical work."

In May 2019, Array announced results from the interim analysis of the Phase 3 BEACON mCRC trial: The second-or-third-line treatment with the BRAFTOVI triplet combination (BRAFTOVI + MEKTOVI + cetuximab) showed statistically significant improvement in overall response rate and overall survival compared to the control group, reducing the risk of death by 48%. The triplet combination could be the first chemotherapy-free, targeted regimen for patients with *BRAF*-mutant mCRC. Array intends to submit these data for regulatory review in the United States in the second half of 2019.

"We are very excited by Array's impressive track record of successfully discovering and developing innovative small-molecules and targeted cancer

therapies," said Mikael Dolsten, Pfizer chief scientific officer and president, Worldwide Research, Development and Medical. "With Array's exceptional scientific talent and innovative pipeline, combined with Pfizer's leading research and development capabilities, we reinforce our commitment to advancing the most promising science, regardless of whether it is found inside or outside of our labs."

Upon the close of the transaction, Array's employees will join Pfizer and continue to be located in Cambridge, Massachusetts and Morrisville, North Carolina, as well as Boulder, Colorado, which becomes part of Pfizer's Oncology Research & Development network in addition to La Jolla, California and Pearl River, New York.

Pfizer expects to finance the majority of the transaction with debt and the balance with existing cash. The transaction is expected to be dilutive to Pfizer's Adjusted Diluted EPS by $0.04 -$0.05 in 2019, $0.04 -$0.05 in 2020, neutral in 2021, and accretive beginning in 2022, with additional accretion and growth anticipated thereafter. Pfizer will provide any appropriate updates to its current 2019 guidance in conjunction with its third quarter 2019 earnings release.

Under the terms of the merger agreement, a subsidiary of Pfizer will commence a cash tender offer to purchase all outstanding shares of Array common stock for $48 per share in cash for a total enterprise value of approximately $11.4 billion. The closing of the tender offer is subject to customary closing conditions, including regulatory approvals and the tender of a majority of the outstanding shares of Array common stock (on a fully-diluted basis). The merger agreement contemplates that Pfizer will acquire any shares of Array that are not tendered into the offer through a second-step merger, which will be completed promptly following the closing of the tender offer. Pfizer expects to complete the acquisition in the second half of 2019.

**Insiders' Interests in the Proposed Transaction**

27. Array insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Array.

28. Notably, it appears that certain Company insiders have secured positions with the combined company upon consummation of the Proposed Transaction. For example, the June 17, 2019 press release announcing the Proposed Transaction notes, "[u]pon the close of the transaction, Array's employees will join Pfizer. . . ."

8

29. Company insiders also stand to receive substantial financial benefits for securing the deal with Pfizer. Prior to entering into the Merger Agreement and in connection with the Proposed Transaction, the executive committee of the Board approved a cash retention pool for certain employees of Array, including the executive officers.

30. Further, according to the Merger Agreement, each Company compensatory option to purchase shares and each restricted stock unit, whether or not vested, will be converted into the right to receive cash payments. The following table sets forth the cash payments the Company's directors and named executive officers stand to receive in connection with their equity awards:

| Name of Executive Officer or Director | Number of Shares subject to Vested In the Money Options (#) | Weighted Avg. Exercise Price Per Share ($) | Cash Consideration for Vested In the Money Options ($) | In the Money Options Number of Shares Subject to Unvested In the Money Options (#) | Weighted- Average Exercise Price Per Share ($) | Cash Consideration for Unvested Stock Options ($) | Total Cash Consideration for Stock Options in Merger ($) |
|---|---|---|---|---|---|---|---|
| Ron Squarer | 1,635,507 | $ 5.07 | $70,212,004 | 1,523,438 | $ 12.19 | $54,558,885 | $124,770,889 |
| Jason Haddock | 355,350 | $ 5.36 | $15,152,528 | 479,902 | $ 10.20 | $18,139,352 | $ 33,291,880 |
| Andrew Robbins | 666,743 | $ 6.98 | $27,349,774 | 783,246 | $ 11.93 | $28,250,402 | $ 55,600,176 |
| Victor Sandor, M.D. | 435,914 | $ 6.98 | $17,882,623 | 688,914 | $ 12.08 | $24,742,638 | $ 42,625,261 |
| Nicholas Saccomano, Ph.D. | 313,874 | $ 7.53 | $12,702,227 | 370,876 | $ 11.54 | $13,521,665 | $ 26,223,893 |
| Curtis Oltmans | 240,692 | $ 10.48 | $ 9,030,804 | — | — | — | $ 9,030,804 |
| Kyle A. Lefkoff | — | — | — | 25,000 | $ 14.55 | $ 836,250 | $ 836,250 |
| Charles M. Baum, M.D., Ph.D. | 25,000 | $ 10.47 | $ 938,250 | 25,000 | $ 14.55 | $ 836,250 | $ 1,774,500 |
| Gwen A. Fyfe, M.D. | 165,000 | $ 5.54 | $ 7,005,300 | 25,000 | $ 14.55 | $ 836,250 | $ 7,841,550 |
| John A. Orwin | 145,000 | $ 5.97 | $ 6,094,300 | 25,000 | $ 14.55 | $ 836,250 | $ 6,930,550 |
| Gil J. Van Lunsen | 25,000 | $ 10.47 | $ 938,250 | 25,000 | $ 14.55 | $ 836,250 | $ 1,774,500 |
| Shalini Sharp | 50,000 | $ 9.59 | $ 1,920,750 | 25,000 | $ 14.55 | $ 836,250 | $ 2,757,000 |
| Carrie Cox | — | — | — | 50,000 | $ 14.74 | $ 1,663,000 | $ 1,663,000 |

31. Moreover, if they are terminated in connection with the Proposed Transaction, Array's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

**Golden Parachute Compensation**

| Name (1) | Cash ($) (2) | Equity ($) (3) | Pension/ NQDC ($) (4) | Perquisites/ Benefits ($) (5) | Tax Reimbursement ($) (6) | Total ($) |
|---|---|---|---|---|---|---|
| Ron Squarer | $ 12,606,468 | $ 66,746,469 | — | $ 63,360 | $ 5,834,816 | $ 85,251,113 |
| Jason Haddock | $ 3,216,600 | $ 20,828,600 | $ 15,378 | $ 46,080 | $ 1,823,417 | $ 25,930,075 |
| Andrew Robbins | $ 5,753,675 | $ 34,516,418 | — | $ 46,080 | $ 3,034,650 | $ 43,350,823 |
| Victor Sandor, M.D. | $ 5,871,800 | $ 30,254,046 | — | $ 46,080 | — | $ 36,171,926 |

**The Recommendation Statement Contains Numerous Material Misstatements or Omissions**

32. The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Array's stockholders. The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed tender or appraisal decision in connection with the Proposed Transaction.

33. Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the background of the Proposed Transaction; (ii) the financial projections relied upon by the Company's financial advisor, Centerview, in its financial analyses; and (iii) the valuation analyses prepared by Centerview in connection with the rendering of its fairness opinion. Accordingly, Array stockholders are being asked to make a tender or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning the Background of the Proposed Transaction***

34. First, the Recommendation Statement omits material information regarding the background of the Proposed Transaction.

35. Critically, the Recommendation Statement fails to expressly indicate whether the confidentiality agreement Array entered into with a global pharmaceutical company referred to in the Recommendation Statement as "Party B" includes a standstill provision that is still in effect and/or contains a "don't ask, don't waive" ("DADW") standstill provision that is presently precluding Party B from making a topping bid for the Company.

36. The disclosure of the terms of any standstill provisions in the confidentiality agreements Array entered into with potential buyers is crucial to Array stockholders being fully

informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

37. The omission of this information renders the statements in the "Background of the Offer and the Merger" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Array's Financial Projections*

38. The Recommendation Statement is materially deficient because it fails to disclose material information relating to Array management's financial projections.

39. With respect to the Company's October 2018 Forecasts, June 2 Forecasts, and June 14 Forecasts, the Recommendation Statement fails to disclose: (i) all line items used to calculate EBIT; and (ii) all line items used to calculate unlevered free cash flow.

40. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

41. The omission of this information renders the statements in the "Certain Financial Projections" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Centerview's Financial Analyses*

42. The Recommendation Statement describes Centerview's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Centerview's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Array's public stockholders are

unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in determining whether to tender their shares in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to Array's stockholders.

43. With respect to Centerview's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) Centerview's basis for assuming that unlevered free cash flows would decline in perpetuity after June 30, 2037 at a rate of 80.0% year-over-year; and (iii) quantification of the individual inputs and assumptions underlying the range of discount rates from 9.5% to 11.5%.

44. With respect to Centerview's *Analyst Price Target Analysis*, the Recommendation Statement fails to disclose: (i) the individual price targets observed by Centerview in the analysis; and (ii) the sources thereof.

45. With respect to Centerview's *Premiums Paid Analysis*, the Recommendation Statement fails to disclose the premiums paid in the transactions observed by Centerview in the analysis.

46. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

47. The omission of this information renders the statements in the "Certain Financial Projections" and "Opinion of Array's Financial Advisor" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

48. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the

Recommendation Statement. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other stockholders of Array will be unable to make a fully-informed decision whether to tender their shares in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations
of Section 14(d) of the Exchange Act and SEC Rule 14d-9**

49. Plaintiff repeats all previous allegations as if set forth in full.

50. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Array stockholders to tender their shares in the Tender Offer.

51. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

52. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

53. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

54. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the other stockholders of Array, who will be deprived of their right to make an informed decision whether to tender their shares if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the other Array stockholders be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

55. Plaintiff repeats all previous allegations as if set forth in full.

56. Defendants violated Section 14(e) of the Exchange Act because they negligently caused or allowed the Recommendation Statement to be disseminated to Array's public stockholders in order to solicit them to tender their shares in the Tender Offer, in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading.

57. Defendants were negligent in allowing the Recommendation Statement to be disseminated with the above-referenced materially misleading statements regarding the background of the Proposed Transaction, the Company's projections and the valuation analyses underlying Centerview's fairness opinion. As directors and officers of Array, the Individual Defendants had a duty to carefully review the Recommendation Statement before it was disseminated to the Company's stockholders to ensure it did not contain untrue statements of material fact and did not omit material facts. The Individual Defendants were negligent in carrying out their duty.

58. Array is imputed with the negligence of the Individual Defendants, who are each directors and/or officers of Array.

59. As a direct and proximate result of these defendants' negligent course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender her shares.

### COUNT III

**Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

60. Plaintiff repeats all previous allegations as if set forth in full.

61. The Individual Defendants acted as controlling persons of Array within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Array and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

62. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

63. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations

as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

64. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

65. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: July 12, 2019    Respectfully submitted,

/s/ *Richard A. Acocelli*
Richard A. Acocelli
**WEISSLAW LLP**
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*